**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| YUSEF ALLEN, | : | |
| | : | CIVIL ACTION NO. 11-3263 (MLC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| EDDIE EMRICH, et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiff is a prisoner confined at New Jersey State Prison. He seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant the application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and file the Complaint. The Court must now review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

**I.  BACKGROUND**

The following factual allegations are taken from the Complaint and accepted as true for purposes of this review.

Plaintiff alleges that in July 2010 he was pat frisked in prison. The unnamed officer performing the pat frisk commented, "What you don't like getting patted down?" Plaintiff replied,

"Who would like for another man to be feeling on them." Defendant Lt. Eddie Emrich then stated to Plaintiff, "You are not special, I am tired of you walking around here as if you are better than everyone else. Take note that you are now on my s*** list." Plaintiff alleges that when he passed Emrich in August 2010, Emrich said, "The first chance I get I am going to take your job from you."

On September 9, 2010, Plaintiff was placed in Temporary Close Custody ("TCC"), where he remained for 12 days with no disciplinary charges being placed against him.[1] Plaintiff alleges that he was not, during that time, interviewed or informed as to the basis for his TCC placement. Plaintiff alleges that while in TCC, his regular cell was searched by Defendant Johnny Maze, who confiscated personal and legal correspondence.[2]

Plaintiff alleges that on September 24, 2010, Emrich said to him, "You're done." Plaintiff alleges that later that day Emrich called the Unit Officer and told him to tell Plaintiff that Plaintiff no longer had a job. On September 28, 2010, Plaintiff received a notice from the Institutional Classification Committee that he was "layed in" from his job assignment.

---

[1] Plaintiff alleges that New Jersey administrative rules require release from TCC after 72 hours unless there are emergent reasons for an extension.

[2] Plaintiff alleges that New Jersey administrative rules prohibit the confiscation of documents without a court order.

Plaintiff alleges that the defendants took these actions against him in retaliation for his exercise of his right of free expression in objecting to the pat down.  Plaintiff also alleges that the 12-day TCC placement violated his right to equal protection, as he did not receive the procedural protections afforded TCC inmates who are alleged to have committed an institutional infraction.  Plaintiff seeks declaratory relief, compensatory damages, and punitive damages.

## II.  STANDARDS FOR SUA SPONTE DISMISSAL

The Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis); 28 U.S.C. § 1915A (prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

3

A complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 . . . (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule

4

8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)

(citations omitted).

When assessing the sufficiency of any complaint, a court

must distinguish factual contentions -- alleging behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court, although assuming the veracity of the facts asserted

in a complaint, is "not bound to accept as true a legal conclusion

couched as a factual allegation."  Id. at 1950.  Thus, "a court

considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth."  Id.  Thus:

> [D]istrict courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court

5

to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

### III.  SECTION 1983 ACTIONS

To state a claim for relief under § 1983, a plaintiff must allege that a person acting under color of state law committed or caused a violation of a right secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.  ANALYSIS

**A.  Equal Protection Claim and Possible Due Process Claim**

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1. The Equal Protection Clause "protect[s] persons, not groups," Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995) (emphasis omitted), and its protections apply to administrative as well as legislative acts.  See, e.g., Raymond v. Chicago Union Traction Co., 207 U.S. 20, 35-36 (1907).  Thus, an equal protection claim can in some circumstances be sustained, even if a plaintiff has not alleged class-based discrimination, but instead has alleged that he has been irrationally singled out as

6

a "class of one."  To proceed on such a claim, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff here has alleged that he was treated differently from other prisoners charged with institutional infractions by being placed in TCC for 12 days without notice of a charge against him, and that the difference in treatment was in retaliation for his objection to a pat frisk.  But a "'pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause'". Thomas v. Independence Twp., 463 F.3d 285, 298 n.6 (3d Cir. 2006) (citations omitted).  Thus, Plaintiff's allegation that he was treated differently in retaliation for voicing an objection to a pat frisk fails to state an Equal Protection claim.

The Court will also consider whether the Complaint states a Due Process claim.  A liberty interest protected by the Due Process Clause may arise from either the Clause itself, or State

law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Dep't of Corrs, 186 F.3d 407, 409 (3d Cir. 1999).

As to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468, and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990) (prisoner has liberty interest under Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (prisoner has liberty interest under Due Process Clause in freedom from involuntary transfer to mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment generally suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding sentence of 30 days disciplinary segregation after hearing at which prisoner was not permitted to produce witnesses); see Asquith, 186 F.3d at 410-11 (no liberty interest under Due Process Clause in remaining in halfway house).

8

But states may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions that effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest); see Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of a state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. Id. at 709. But the Griffin court noted that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, then that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id. at 708.

9

Plaintiff's 12 day confinement in TCC here did not expose him to "atypical and significant hardship."  Accordingly, the Complaint fails to state a claim for deprivation of liberty without due process.

The Equal Protection and Due Process claims will be dismissed with prejudice.

**B.    The Retaliation Claim**

Plaintiff alleges that the defendants retaliated against him for objecting to a pat frisk by placing him in TCC, taking away his prison job, and confiscating certain documents in a search of his cell, more specifically, grand jury transcripts and "discovery."

Disciplinary confinement of prisoners does not generally implicate due process protections.  Sandin, 515 U.S. at 484-86.  But retaliation claims survive Sandin, even when the retaliatory action does not involve a liberty interest.  Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000).  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution".  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).

To prevail on a retaliation claim, a plaintiff must show that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) the protected activity was a

10

substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); see Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997).

The facts alleged here are too minimal to raise Plaintiff's alleged right to relief above the speculative level.  His grumbling about the pat frisk did not expose the defendants to any negative consequence that might motivate them to "retaliate" against Plaintiff.  Nor are the alleged retaliatory acts sufficient to deter a person of ordinary firmness from exercising constitutional rights.  Moreover, Plaintiff has alleged no facts that suggest that Emrich had any decision-making authority as to the loss of Plaintiff's institutional job, his placement in TCC, or the search of his cell and confiscation of certain legal documents.  The facts alleged merely suggest that Emrich was hostile to Plaintiff.  Nor has Plaintiff alleged any facts that suggest that Maze, who searched Plaintiff's cell, even knew of Plaintiff's statement objecting to the pat frisk.  The mere temporal association between these events is not sufficient to state a claim for retaliation.  This claim will be dismissed with prejudice.

## C.   The Deprivation of Property Claim

Plaintiff alleges that Maze confiscated transcripts and "discovery."

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984).  However, post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982); but see Tillman v. Lebanon Cnty. Corr'l Fac., 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

Plaintiff has failed to state a claim against Maze here because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  See New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 et seq.  Plaintiff has alleged no facts suggesting that the defendants deprived him of property pursuant to an established state procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J.A.C. § 10A:1-11.1 et seq.  Accordingly, this claim will be dismissed with prejudice.

12

D.   **Pendent State Claims**

A district court, upon dismissing all claims over which there is original jurisdiction, may decline to exercise supplemental jurisdiction over related state law claims.  28 U.S.C. § 1367(c)(3).  Where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, this Court will dismiss the Complaint insofar as it may be construed to assert state law claims ("State Claims") without prejudice to Plaintiff to bring a new action in the appropriate state court, asserting the State Claims only, within 30 days.  <u>See</u> 28 U.S.C. § 1367(d).

## V.   CONCLUSION

All federal claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  The Court will issue an appropriate order and judgment.

　　　s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  March 16, 2012

13